[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR ALIMONY AND CHILD SUPPORT PENDENTE LITE DATED FEBRUARY 26, 2001
Initially the court notes that this proceeding was initiated by summons and complaint dated April 25, 2000 and returnable May 30, 2000 in which the plaintiff petitioner seeks a dissolution of the marriage, alimony, custody of the minor child, support of the minor child, change of name, property settlement and such other relief as the court deems fair and equitable.
An examination of the file indicates that from the return date to the present date there have been no pendente lite orders entered as concerns temporary alimony and temporary child support.
On April 25, 2001 and April 26, 2001 the plaintiff and the defendant with their respective attorneys and the attorney that had earlier been appointed for the minor child appeared before the court and testimony was entertained as concerns the motion and exhibits received incident thereto.
The parties filed financial affidavits. The plaintiff submitted a guideline worksheet and the plaintiff presented proposed orders.
According to the testimony of the plaintiff, the defendant stopped paying bills relating to the home and the needs and requirements of the plaintiff and the minor child some considerable time ago. The exact date is somewhat in dispute. The plaintiff claiming that the termination of CT Page 5799 financial assistance by the defendant related back to February of 2000. The plaintiff subsequently acknowledged however that in June of 2000 the defendant did pay the real estate taxes on the parties' residence.
The plaintiff testified that in this interim period of time that she had been paying, in her words, all the expenses for herself and the child. The plaintiff indicated that the defendant, in her words, had left his job, that the plaintiff now has been required to secure medical and dental coverage for herself and the child.
The plaintiff testified that the defendant's employment was terminated in May of 2000; that incident to employment that he had at that time at the State University of New York where the defendant held a position as administrator and taught one class. The defendant, according to her testimony, had been there for a period of two years. Prior to that employment, according to the plaintiff, the defendant had been at Clemson University for a period of six years where he held a teaching position.
The plaintiff's testimony was to the effect that the defendant's earnings at the time he left the State University of New York were to the amount of $91,000.00 a year. The plaintiff testified that she was familiar with the defendant's finances because she handled financial matters until the parties separated.
The plaintiff testified that in her opinion the defendant had not made a sincere effort to secure other employment nor to properly treat the addiction of alcohol with which he is apparently afflicted.
The plaintiff testified that she sought child support in the amount of $185.00 a week and requested temporary alimony in the amount of $200.00 a week.
The plaintiff in her testimony admitted that she in the past had been an alcoholic.
The plaintiff characterized the defendant as an alcoholic and indicated that in her view his health had deteriorated.
It was the plaintiff's opinion that the defendant could secure gainful employment, mindful of the nature of his education, where he would annually get $100,000.00 a year if he was desirous of doing so.
According to the plaintiff the defendant now and for some time in the past has resided with his parents. Her testimony was to the effect that the defendant had no car. CT Page 5800
The plaintiff indicated that she has some concerns with regard to trying to provide for financial benefits for the one minor child Hartney as concerns the child's prospective college education.
According to the plaintiff the defendant went into a rehabilitative facility in December of 2000. The plaintiff, according to her financial affidavit, is employed by Project Learn as a project coordinator located in the Old Lyme office; that she runs and conducts this activity pursuant to a grant from the state. The plaintiff was hired for that post in January of 2000. She has no other additional employment. She characterized herself as a full-time parent.
The plaintiff's claim was to the effect that since February of 2000 she has received no cash or other financial remuneration from the defendant with regard to maintaining the household or support for herself or the minor child.
The minor child, Hartney, is age 7 and was described as being in good health.
The plaintiff characterized her health as fine. The plaintiff is involved in counseling three times a week and in her words is staying clean.
The plaintiff has a B.A. degree in Natural Resources and Education attained at the University of Rhode Island from which she graduated in 1979.
The plaintiff testified as to her knowledge of the defendant's education which included his securing a PhD in the field of horticulture; this allegedly from Purdue University.
There was a period of time during the marriage where the defendant, according to the plaintiff, taught at the University of Florida. That tenure was relatively brief.
The plaintiff acknowledged that in addition to her income with Project Learn that on rare occasions there were some small amounts earned in her doing work in stained glass and that she had shows in that genre at Block Island.
Prior to the marriage of the parties the plaintiff had been involved in work in stained glass on a full-time basis.
In the summer of 2000 the plaintiff indicated that she earned approximately $2,000.00 in that particular field. CT Page 5801
In response to a question from the court, the plaintiff indicated that the property at 9 Huntley Court in Niantic is in the joint names of the parties, as is the property at 10 Pember Road in Waterford.
There are four vehicles altogether presumably available to the plaintiff or the defendant as reflected on her financial affidavit.
It appears that the last time at which the defendant was employed and/or compensated for his services was August of 2000.
The contacts between the defendant and the child Hartney have been infrequent of late.
The testimony was to the effect that the last time that the defendant physically saw the child was November of 2000.
The defendant, according to the plaintiff, has related to her that he has stopped and terminated his immoderate use of alcohol.
Apparently from the time of the initiation of the petition, the only contacts between the parties have been in court.
There are now apparently frequent telephonic contacts between the defendant and the child.
The defendant was born in 1957 in New London, graduated from New London High School. Subsequently he graduated from the University of Rhode Island where he studied plant science. Horticulture is his field of expertise.
The defendant has a master's degree and a PhD from Purdue University and he taught there for a long time.
Defendant's thesis was soil fungus and plant growth.
The defendant felt that he could teach at the high school level in his field.
The defendant's status at the University of Florida was that of an assistant professor.
The defendant has published over 100 articles in his field of horticulture.
The defendant left the University of Florida after receiving a better CT Page 5802 offer from Clemson University. The defendant was at Clemson during the period 1991 to 1998. The defendant then left Clemson to work at the University of New York.
Defendant's last paycheck from the University of New York was in August 2000.
In December 2000 the defendant was hospitalized in Hauphaug Hospital for rehabilitative purposes and then subsequently at the Stonington Institute.
Defendant's stay at Hauphaug was for five days.
The defendant regularly attends counseling sessions and has an A.A. sponsor.
The defendant was in patient at Stonington for ten days.
The defendant acknowledged his obligation to support his child.
The defendant belongs to various professional horticultural associations.
The home of the defendant's parents has been foreclosed and he is obligated to find another residence.
The defendant is on medication including Clonasapan.
The defendant is treating with Dr. Regatte in Old Saybrook.
The defendant characterizes his health as poor and that he is affected with hypoglycemia.
The defendant has available to him a line of credit with Citizen's Bank for a total of $15,000.00. He has used $6,000.00 and has $9,000.00 left.
Recently the defendant applied to Monsanto Chemical incident to trying to secure other employment but apparently was rejected.
The defendant went through a program at the Stonington Institute.
The defendant acknowledged that he is an alcoholic. He attends AA regularly. The defendant acknowledged that his problems with alcohol have affected his ability to get or retain positions of employment.
He testified that he has high anxiety levels and suffers from panic attacks. CT Page 5803
The defendant indicated he had applied for the possibility of a position at the University of Connecticut and has applied to Mitchell College and Monsanto Chemical.
The defendant has had no contact with Pfizer's.
The defendant indicated that he does not now and has not for some time driven a motor vehicle. This for the last one and a half years.
He indicated that he is eligible now for reinstatement.
The defendant in the past has not been obligated to pay his parents anything with regard to their providing him with shelter.
The defendant indicated that he speaks with the child Hartney on a daily basis at this time but there have been no recent physical contacts. He expressed an abiding love and affection for the child.
The defendant has not registered with any employment agency or with the State Department of Unemployment nor has he applied for any unemployment benefits.
The defendant acknowledged that since August of 2000 he has not made any regular payments to the plaintiff for the benefit of herself or the child.
In response to questions by the court, the defendant acknowledged that he has had three prior operating under the influence cases; one in Connecticut, one in New York and one in South Carolina.
Fortunately, on the basis of the financial affidavits, the home and residence at 9 Huntley Court in Niantic is free and clear and no mortgage payments are required.
In observing the defendant in court, it is to be noted that his outward appearance would give evidence of immoderate use of alcohol in the past query as to the present state of his health and his hands tremble.
According to the plaintiff's financial affidavit her gross weekly income is $438.00. Her net after deductions is $327.00. She shows weekly expenses of $488.74. Fortunately the plaintiff has no debts. The total value of the plaintiff's assets are $195,864.00.
The defendant's financial affidavit shows 0 for income. He indicates that his weekly expenses are $218.00. $11,000.00 worth of debt. Interests in real estate, motor vehicles, securities, insurance, deferred CT Page 5804 compensation plans, according to the affidavit, total $359,200.00.
As indicated in response to a question by the court, the defendant acknowledged that there are funds that he has access to which will allow him to comply with an order by the court as to alimony or support.
The court notes the defendant's payment of the real estate taxes to the Town of East Lyme on July 28, 2000 in the amount of $1,870.84. See Defendant's Exhibit 1.
From Plaintiff's Exhibit 1 the court notes that in 1999 according to the joint tax return of the parties that adjusted gross income was $88,037.00 with the defendant's profession listed as professor.
Plaintiff's Exhibit 2 purports to reflect the status of the defendant's retirement plan statements and the values thereof.
The guideline worksheet filed with the court by counsel for the plaintiff premises the same on the basis of the defendant having a weekly income of $1,000.00; this on the basis of his educational attainments and past employment. Whether this is realistic, based upon the defendant's present problems, the state of his health, the prospective reinstatement of his motor vehicle operator's license, and insurance requirements is subject to some question but the court accepts it for the purpose of making a determination as to child support.
The court therefore will grant the plaintiff's request with regard to child support for the minor child Hartney in the amount of $180.00 a week.
In addition thereto, the court will grant the plaintiff temporary alimony in the amount of $100.00 a week.
On the basis of the shortfall shown on her financial affidavit, the same appears to be a total of $162.00.
The court is mindful of the question as to retroactivity; to wit, back to September 11, 2000, which would constitute a substantial sum.
This hearing is on a motion and is not a final determination of all issues between the parties and the court respectfully defers taking any action with regard to retroactivity and the amount thereof and its effect as to the overall respective assets of the parties as the same may be determined at the time of a final hearing on the merits.
The court has indicated to counsel that it will assist with regard to CT Page 5805 having the matter set down at the earliest possible date.
Other issues including discovery may be addressed by an appropriate motion.
Austin, JTR